UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ROBERT LAWLOR, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:10-cv-1282 (JCH) |
| v. | : | |
| JOHN CONNELLY, | : | MAY 5, 2011 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS (DOC. NO. 9)**

**I.    INTRODUCTION**

Plaintiff, Robert Lawlor, is a former officer of the Hartford Police. Defendant John Connelly is a former Connecticut State's Attorney. After an incident in which Lawlor used deadly force in the line of duty, Connelly applied for a special, one-person grand jury to investigate and report on whether there was probable cause to arrest Lawlor. This unusual, Connecticut state grand jury process ultimately led to a criminal prosecution against Lawlor. After he was acquitted following trial, Lawlor brought this action pursuant to 42 U.S.C. § 1983. Lawlor alleges that Connelly failed to disclose exculpatory evidence at three stages prior to trial: (1) when applying for the appointment of the grand jury; (2) during the grand jury investigation; and (3) after that investigation, when the case was turned over to another state's attorney for trial.

Connelly has filed a Motion to Dismiss, arguing that, as a prosecutor, he is protected by absolute immunity for the conduct alleged. This Motion presents two issues of first impression: (1) whether absolute immunity applies to a prosecutor's conduct in seeking appointment of Connecticut's unusual, investigatory grand jury; and, (2) whether absolute immunity applies to a prosecutor's presentation of evidence to

1

such a grand jury. The court answers both of these questions in the affirmative. The court also holds that Connelly is entitled to absolute immunity for the claim that he failed to disclose exculpatory information to his colleague, who was assigned to prosecute the case against Lawlor. Accordingly, Connelly's Motion to Dismiss is granted.

## II. BACKGROUND

While investigating illegal firearms activity, Lawlor shot both the driver and passenger of a moving vehicle, resulting in the passenger's death. Complaint ¶¶ 10, 11. Lawlor claims that he fired upon the car because the driver was accelerating towards Lawlor's partner in a manner that posed an imminent danger and because the passenger appeared to be raising a gun. Id. ¶ 10. Lawlor also claims that his partner later confirmed to their supervisor that the car was being "operated in a manner that presented a grave danger." Id. ¶ 15. The Complaint alleges that Connelly knew about the partner's statement, id., and that Connelly maliciously or recklessly failed to disclose that statement while seeking, and while assisting, a grand jury investigation, id. ¶¶ 18, 22.

The investigatory grand jury at issue in this case is a creature of Connecticut statute, and it differs in significant respects from a traditional grand jury. See Connelly v. Doe, 213 Conn. 66, 70-71(1989) ("[T]he one-man investigatory grand jury is purely a creature of statute" and "has no common law power"). Connecticut statute provides that, upon application of a state's attorney or a state judge, an investigatory grand jury may be appointed in order to conduct "an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed." Conn. Gen. Stat § 54-47c(a). This investigatory grand jury is unusual insofar as it may consist

2

of a single grand juror, who must be a judge or retired judge, or of a panel of judges. Conn. Gen. Stat. § 54-47b(3).[1]  In addition, "[t]he judge or referee who is appointed to conduct an inquiry has no authority to issue an indictment.  His sole function is to investigate and report his findings to the court."  In re Investigation of the Grand Juror into the Bethel Police Department, 188 Conn. 601, 604 (1982). "Investigating grand juries neither try nor condemn nor accuse; they only inquire and report."  Id. at 605 (emphasis in original).

State prosecutors may be involved in the investigatory grand jury process at two stages.  First, as noted above, only a state judge or a state's attorney may apply for the appointment of such a grand jury.  Conn. Gen. Stat. § 54-47c(a).  Second, once the grand jury is appointed, it "may . . . seek the assistance of the chief state's attorney or state's attorney who filed the application, or his designee."  Id. § 54-47f(a).  A prosecutor appointed to assist the grand jury may be authorized to subpoena witnesses and documents, see id. § 54-47f(b); may file criminal complaints to enforce those subpoenas, id. § 54-47f(c); and may examine the witnesses, id. § 54-47f(d).  If appointed to assist, the state's attorney must "disclose to the investigatory grand jury any exculpatory information or material in his possession, custody or control concerning any person who is a target of the investigation."  Id. § 54-47f(f).

Lawlor's Complaint alleges that Connelly applied for an investigatory grand jury to inquire into the shooting incident.  Complaint ¶ 12.  A grand jury, consisting of a

---

[1] Conn. Gen. Stat. § 54-47(b)(3) provides that the single grand juror may be a judge or "constitutional state referee."  A constitutional state referee is a Connecticut judge who has reached the mandatory retirement age of 70.  See Conn. Const. art. 5, § 6.  As a referee, he exercises the power of a judge of the Superior Court on matters referred to him by the Court.  Id.; Conn. Gen. Stat. § 51-50f.

3

single Connecticut Superior Court judge, was appointed, and he appointed Connelly to assist in the investigation. Id. ¶ 13; Pl. Opp. at 1; Def. Mem. at 1-2. Lawlor alleges that Connelly failed to disclose exculpatory information—in particular, the statement made by Lawlor's partner—at three stages in the process leading to Lawlor's prosecution. First, according to the Complaint, Connelly's application for appointment of the grand jury "contained materially incorrect information for which Mr. Connelly vouched in an affidavit." Complaint ¶ 12. Second, the Complaint alleges that Connelly withheld exculpatory information from the investigatory grand jury after Connelly was appointed to assist in the investigation. Id. ¶¶ 14-15, 26-27. Third, the Complaint alleges that, after the grand jury investigation, Connelly failed to disclose the exculpatory information to the prosecutor assigned to try the case. Id. ¶ 20. Lawlor claims that, if this exculpatory information had been disclosed at one of these stages, he would not have been arrested and subjected to prosecution. Id. ¶¶ 21, 28, 37.

## III.   LEGAL STANDARD

Prosecutors are protected by an absolute immunity when performing certain of their responsibilities, but only qualified immunity when performing other tasks. See, e.g., Burns v. Reed, 500 U.S. 478 (1991) (holding that a prosecutor was protected by absolute immunity for preparing and arguing a warrant application, but not for providing legal advice to investigating police officers). When a defendant moves to dismiss upon a claim of absolute prosecutorial immunity, the court takes the plaintiff's allegations to be true, Kalina v. Fletcher, 522 U.S. 118, 122 (1997) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 261 (1993)), and the defendant bears the burden of showing that he is entitled to absolute immunity, Buckley, 509 U.S. at 269. "[T]he official seeking absolute

4

immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Burns, 500 U.S. at 486-87 (citations omitted).

Whether or not a prosecutor's conduct is protected by absolute immunity depends upon the function he was performing. Kalina, 522 U.S. at 127 ("we examine the nature of the function performed, not the identity of the actor who performed it"). Absolute immunity generally applies where a prosecutor is performing his responsibilities as a state's advocate and an officer of the court, or where a prosecutor is engaged in conduct that is intimately connected to judicial proceedings or the initiation of prosecution. See Van de Kamp v. Goldstein, 555 U.S. 335, ---, 129 S. Ct. 855, 861 (2009) (collecting cases); Buckley, 509 U.S. at 273 ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate of the State, are entitled to the protections of absolute immunity"). In contrast, "absolute immunity may not apply when a prosecutor is . . . instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp, 129 S. Ct. at 861 (citing Imbler v. Pachtman, 424 U.S. 409, 431 n.33 (1976)) (emphasis added). However, some tasks that can be described as administrative or investigative may qualify for absolute immunity. See, e.g., Van de Kamp, 129 S. Ct. at 861-62 (holding that failure to train and provide information sharing systems are administrative tasks that may be protected by absolute immunity); Buckley, 509 U.S. at 273 (investigatory functions that relate to an advocate's preparation for the initiation of prosecution or for judicial proceedings are entitled to absolute immunity);

5

Warney v. Monroe County, 587 F.3d 113, 123-25 (2d Cir. 2009) (holding that delaying release of exonerating evidence while conducting further investigation was protected by absolute immunity).

**IV. DISCUSSION**

    **A. Alleged Misconduct in the Application for a Grand Jury**

The Complaint alleges that Connelly's application for an investigatory grand jury "contained materially incorrect information for which Mr. Connelly vouched in an affidavit." Complaint ¶ 13. This conduct is protected by absolute immunity.

In Burns, the Supreme Court held that prosecutors are entitled to absolute immunity when they perform the role of an attorney by preparing, filing, and "appearing before a judge and presenting evidence in support of a motion for a search warrant." 500 U.S. at 491. Although a search warrant is an investigative tool, the Court explained that such actions "clearly involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" Id. "[S]ince the issuance of a search warrant is unquestionably a judicial act, appearing at a probable-cause hearing is 'intimately associated with the judicial phase of the criminal process.'" Id. at 492 (quoting Imbler, 424 U.S. at 430).

Like an applicant for a search warrant, a prosecuting attorney seeking appointment of an investigatory grand jury must apply to a judicial body for a special investigative tool. Connecticut law provides the following process:

> (a) Any judge of the Superior Court, Appellate Court or Supreme Court, the Chief State's Attorney or a state's attorney may make application to a panel of judges for an investigation into the commission of a crime or crimes whenever such applicant has reasonable belief that the

6

> administration of justice requires an investigation to
> determine whether or not there is probable cause to believe
> that a crime or crimes have been committed.
>
> (b) Each application for an investigation into the commission
> of a crime or crimes shall be made in writing upon oath or
> affirmation to a panel of judges. . . .

Conn. Gen. Stat. § 54-47c(a). The statute further provides that a prosecutor must support the application with specific kinds of information, including "a full and complete statement of the facts and circumstances relied upon by the applicant to justify his reasonable belief that the investigation will lead to a finding of probable cause that a crime or crimes have been committed," id. § 54-47c(b), and a statement of any "other normal investigative procedures" that have been used and an explanation of why further use of such procedures is not likely to suffice, id. § 54-47c(c).

The Burns decision therefore compels the conclusion that Connelly is protected by absolute immunity for his actions in preparing and filing the application for an investigative grand jury. First, like the prosecutor in Burns, Connelly was performing a task assigned by law to a state's attorney. Conn. Gen. Stat. § 54-47c(a); see Burns, 500 U.S. at 491 n.7 (noting that in the jurisdiction at issue only a prosecutor, not a police officer, could apply for a search warrant). Second, the preparation and filing of an application for an investigatory grand jury is "intimately associated with the judicial phase of the criminal process," because the decision whether to approve such an application is "unquestionably a judicial act." Burns, 500 U.S. at 492; see also Conn. Gen. Stat. § 54-47d(a) (assigning the decision to "approve[] the application and order[] an investigation" to a three judge panel (emphasis added)). Third, although Connelly was not seeking an indictment or a conviction, he was, nonetheless, acting as

7

"advocate for the State." Burns, 500 U.S. at 491. A prosecutor's application for an investigatory grand jury must be based upon his "reasonable belief that the administration of justice requires an investigation," Conn. Gen. Stat § 54-47c(a), and supported by a statement of facts and circumstances "justify[ing] his reasonable belief that the investigation will lead to a finding of probable cause," id. § 54-47c(b). Thus, an application reflects the prosecutor's judgment that the interests of the state require a grand jury investigation and his advocacy in favor of that view.

The allegation that Connelly "vouched" for the information in the application does not support a different conclusion. Lawlor argues that it does, relying on Kalina v. Fletcher, 522 U.S. 118 (1997). In Kalina, the Supreme Court found it "quite clear" that a prosecutor's preparation and filing of an information and a motion for an arrest warrant were protected by absolute immunity. Id. at 129. However, the Court withheld absolute immunity solely with respect to the prosecutor's act of "personally attesting to the averments" in a third document submitted in support of the motion for the arrest warrant.[2] Id. The Court refused to grant absolute immunity because, "[t]estifying about the facts is the function of the witness, not of the lawyer. . . . [T]he only function that she performs in giving sworn testimony is that of a witness." Id. at 130-31. The Court emphasized that the certification was a "distinct" component of the application, id. at 131, and that swearing to it was a task that any competent witness could perform: "Although the law required that document to be sworn or certified under penalty of perjury, neither federal nor state law made it necessary for the prosecutor to make that

---

[2] The Court acknowledged that "the preparation and filing of [the certification] was part of the advocate's function," Kalina, 522 U.S. at 129, and suggested that "even the selection of the particular facts to include in the certification" would be protected by absolute immunity, id. at 130.

8

certification. In doing so, petitioner performed an act that any competent witness might have performed." Id. at 129-30.

Here, by contrast, Connecticut law requires that the "application . . . shall be made in writing upon oath or affirmation," Conn. Gen. Stat. § 54-47c(b), by "[a]ny judge of the Superior Court, Appellate Court or Supreme Court, the Chief State's Attorney or a state's attorney," id. § 54-47c(a). It does not identify any "distinct" evidentiary component that could be sworn to by any other competent witness. Much of the information that must be included in the application is information that only the applicant is distinctively competent to provide and affirm, such as the "statement of the facts concerning all previous applications known to the applicant," Conn. Gen. Stat. § 54-47c(b), and a "statement of the reasons for the applicant's belief that the appointment of an investigatory grand jury . . . will lead to a finding of probable cause," id. § 54-47c(c). Every indication given in the statute is that it is the applying prosecutor who must swear to the application. Therefore, in "vouching" for the information in the application, Connelly did not perform a function that any witness could have performed. See Kalina, 522 U.S. at 129-30. He performed a task assigned by law to a judge or state's attorney.

In sum, a prosecutor's role in preparing and filing an application for an investigatory jury pursuant to Conn. Gen. Stat. § 54-47c is akin to the court-related advocacy functions that have been recognized to be protected by absolute immunity. See Burns, 500 U.S. at 491-92; see also Kalina, 522 U.S. at 129. Therefore, Connelly is entitled to absolute immunity with respect to his preparation and filing of such an application.

9

### B. Alleged Misconduct During the Grand Jury Investigation

The Complaint alleges that, after Connelly was appointed to assist the investigatory grand jury, Connelly "knowingly withheld exculpatory evidence and intentionally misrepresented the fact that he possessed exculpatory evidence by refusing to offer evidence" that would tend to indicate that Lawlor's use of force was justified. Complaint ¶ 15. "Connelly . . . falsely represented to the grand jury that he possessed no exculpatory evidence, a fact he either knew to be false or recklessly represented." Complaint ¶ 18. Connelly is entitled to absolute immunity for claims arising out of this conduct.

The Second Circuit has repeatedly held that a prosecutor is entitled to absolute immunity for conduct before a traditional grand jury. See, e.g., Bernard v. County of Suffolk, 356 F.3d 495, 505 (2d Cir. 2004) ("we conclude that, regardless of defendants' political motives, absolute immunity shields them from suit pursuant to § 1983 . . . for any misconduct in the presentation of evidence to the grand juries"); Pinaud v. County of Suffolk, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding that prosecutors are absolutely immune from claims of presenting false evidence to the grand jury); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) ("we, along with several sister circuits, have consistently stated that prosecutors are immune from § 1983 liability for their conduct before a grand jury").[3]

---

[3] Lawlor claims that, in Barbera v. Smith, 836 F.2d 96 (2d Cir. 1987), the Second Circuit rejected a prosecutor's claim to absolute immunity for conduct "before a federal grand jury with power to indict." Opp. at 6. The claim in Barbera was based on the prosecutor's failure to provide police protection to a person who had agreed to provide information during an ongoing investigation. Barbera, 836 F.2d at 98, 101. The Second Circuit rested its holding on the fact that the prosecutor's activities "at the time of the alleged conduct herein seem to have involved primarily the direction of an investigation by police and

The only apparent basis for distinguishing these holdings is that a traditional grand jury has the power to indict, whereas the investigatory grand jury at issue here can "only inquire and report." In re Investigation of the Grand Juror, 188 Conn. at 605. This distinction does not warrant a different result in this case. Investigation is one of the central functions of a traditional grand jury as well. See, e.g., Branzburg v. Hayes, 408 U.S. 665, 688 (1972) (a grand jury's "task is to inquire into the existence of possible criminal conduct"); In re Investigation of the Grand Juror, 188 Conn. at 605 ("grand juries of the indicting type do not try, but enquire" (quotation omitted)). A traditional grand jury may carry out that investigative function for considerable time before expecting or intending to indict anyone. See United States v. Williams, 504 U.S. 36, 48 (1992) ("the grand jury may investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not" (emphasis added; quotation omitted)); United Stated v. Dionisio, 410 U.S. 1, 15-16 (1973) ("a sufficient basis for an indictment may only emerge at the end of the investigation when all the evidence has been received"). Yet, the Second Circuit has held that absolute immunity applies to a prosecutor's conduct before a traditional grand jury without limiting that holding to the period in which a grand jury is narrowing in upon an indictment. See Bernard, 356 F.3d at 498-500, 505 (holding that absolute immunity applied to claims that prosecutors used the grand jury to "pursue a series of politically motivated investigations and

---

other law enforcement personnel." Id. at 101. That type of investigatory conduct is not what is alleged here.

Lawlor provides no page citation for the claim that the Barbera case involved the prosecutor's conduct before a grand jury. On its own reading, the court finds only a passing reference to the fact that the cooperator had "agreed to testify . . . before a federal grand jury." Id. at 101. Contrary to Lawlor's reading, the Barbera opinion acknowledges that absolute immunity applies to a prosecutor's "presentation of evidence to a grand jury." Id. at 99-100 (citing Maglione v. Briggs, 748 F.2d 116 (2d Cir. 1984) (per curiam)).

indictments"); Maglione, 748 F.2d at 118 (acknowledging that a claim based on a prosecutor's pursuit of an investigation and an indictment might have survived if there was evidence "that he was performing investigatory acts apart from the grand jury inquiry" (emphasis added)). Thus, Second Circuit precedent supports application of absolute immunity to conduct before a grand jury, regardless of whether that grand jury is engaged in an investigation or issuing an indictment.

This conclusion finds further support in the case law drawing the distinction between an advocate's conduct that is protected by absolute immunity and investigative conduct that is protected by qualified immunity. In Buckley, the Supreme Court held that prosecutors were not entitled to absolute immunity for fabrication of evidence "during the preliminary investigation of an unsolved crime." Id. at 274-75. The conduct at issue occurred "during the period before they convened a special grand jury to investigate the crime." Id. at 274. The Buckley grand jury was empaneled "well after the alleged fabrication of false evidence." Id. The Court emphasized that, during that period, the prosecutors were not acting as "officer[s] of the court," but were instead performing "investigative functions normally performed by a detective or police officer." Id. at 273 (emphasis added). Rather than holding that all investigative work is not protected by absolute immunity, the Buckley Court adopted a more nuanced line:

> A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.

Buckley, 509 U.S. at 273 (emphasis added). Thus, the relevant distinction is not simply between investigation and litigation conduct, but between investigative work associated with the police investigation phase of the criminal process and other work, including investigation, that is associated with the judicial phase of the criminal process.[4]

This distinction appears throughout the case law on prosecutorial immunity. As discussed above, the Supreme Court in Burns, held that a prosecutor's advocacy in support of a search warrant "involve[s] the prosecutor's role as advocate for the State, rather than his role as 'administrator or investigative officer." 500 U.S. at 492 (quotation omitted). In Burns, the Court also held that the prosecutor was not entitled to immunity for providing legal advice and guidance to the investigating police officers, prior to the search warrant application. Id. at 493-94. The Court explained, "We do not believe . . . that advising the police in the investigative phase of a criminal case is so intimately associated with the judicial phase of the criminal process." Id. at 493. Thus, Burns similarly applied absolute immunity to investigation-related conduct that is closely tied to

---

[4] Lawlor argues that Buckley indicates that the decision to apply or deny absolute immunity may be made by asking whether the prosecutor had probable cause. See Buckley, 509 U.S. at 274 n.5 (suggesting that a prosecutor is not entitled to absolute immunity for "investigative acts made before there is probable cause to indict"). However, as Lawlor concedes, this "cannot be said to be a bright-line rule." Opp. at 4. A rule could not to be drawn based on the point at which the prosecutor actually has probable cause, because the Buckley Court also acknowledged that a prosecutor is entitled to absolute immunity for engaging in prosecution without probable cause. Buckley, 509 U.S. at 274 n.5. A rule also could not be drawn simply based on the point at which the prosecutor believes he has probable cause, or else every prosecutor could easily extend absolute immunity into the police investigation stage simply by alleging that he had such a belief. Nor could the rule be drawn based on the point at which the prosecutor has, as a formal, legal matter, established probable cause, by obtaining a warrant or indictment. This would conflict with established case law holding that a prosecutor is entitled to immunity for conduct involved in seeking an arrest warrant, Kalina, 522 U.S. at 509, or seeking an indictment, see, supra, at 11. The Buckley Court's discussion of the fact that the prosecutors in that case lacked probable cause must be read not as establishing a bright-line rule based on the existence or non-existence of probable cause, but instead as emphasizing one important indication that the prosecutors there were like police detectives in the process of investigating an "unsolved crime," rather than preparing to initiate the judicial phase of the criminal process. See Buckley, 509 U.S. at 274 ("The prosecutors do not contend that they had probable cause to arrest petitioner or to initiate judicial proceedings during that period").

formal, judicial proceedings, and qualified immunity to conduct that is more closely related to police investigation.

A recent Second Circuit decision also reflects this distinction. In <u>Warney v. Monroe County</u>, 587 F.3d 113 (2d Cir. 2009), the Second Circuit held that prosecutors were protected by absolute immunity for delaying release of exonerating DNA test results during a period in which they performed additional investigative measures. The Second Circuit acknowledged that, "If one focuses on the DNA testing, the prosecutors' conduct might be classified as investigative; if one focuses on the act of delaying disclosure, the prosecutors' conduct might be classified as administrative, or possibly investigative." <u>Warney</u>, 587 F.3d at 123. However, the court concluded that, "it is unhelpful to ascertain the prosecutors' functional role by isolating each specific act done or not done; rather, a prosecutor's function depends chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." <u>Id.</u> The <u>Warney</u> court held that, considered in context, the investigative measures were part of the prosecutors' role as advocates because they were undertaken in order to fulfill their obligation to determine whether or not to oppose Warney's motions for post-conviction relief. <u>Id.</u> at 124 ("The proper and useful focus for ascertaining the function being served by a prosecutor's act is therefore on the pendency of court proceedings that engage the prosecutor as an advocate for the state").

The investigatory grand jury proceeding at issue here is closely tied to the judicial phase of criminal proceedings and to the initiation of prosecution. First, even though a traditional grand jury is, in important respects, not a part of the judicial branch, <u>see</u> <u>Williams</u>, 504 U.S. at 47 ("the grand jury is an institution separate from the courts, over

whose functioning the courts do not preside"), proceedings before a grand jury are considered part of the "judicial phase of criminal proceedings" for purposes of prosecutorial immunity, Bernard, 356 F.3d at 503 (the presentation of evidence to a grand jury "lie[s] at the very core of the prosecutor's role as an advocate engaged in the judicial phase of the criminal process"). Connecticut's investigatory grand jury bears a much closer connection to the judiciary. It is appointed upon the decision and order of a panel of judges, and by action on that order by the Chief Court Administrator, Conn. Gen. Stat §§ 54-47c, 54-47d; its membership consists of a judge or panel of judges, id. § 54-47b(3); and, upon completion of its investigation, it must report its findings to a court, id. § 54-47g(a). A prosecutor assisting in the investigation serves by appointment of the judge or judges conducting the investigation. Id. § 54-47f(a). Thus, proceedings before an investigatory grand jury have an even stronger claim to being deemed part of the "judicial phase of criminal proceedings," and a prosecutor assisting such an investigation is even more clearly acting as an officer of the court.

Second, proceedings before an investigatory grand jury are closely connected with the initiation of criminal proceedings. The fact that the investigatory grand jury does not itself issue an indictment does not show that a prosecutor's conduct before an investigatory grand jury is not closely tied to the initiation of criminal proceedings. To the contrary, the investigatory grand jury is available to a prosecutor only in cases where he can affirm that other investigative methods are inadequate to establish probable cause, Conn. Gen. Stat. § 54-47c(d), but in which the prosecutor also has a "reasonable belief" that the process will lead to a finding of probable cause. Id. § 54-47c(b). In such circumstances, an investigatory grand jury is, like a traditional grand

15

jury, the prosecutor's key to obtaining a formal accusation and to initiating prosecution. See Connelly, 213 Conn. at 70 (drawing an analogy between investigating and indicting grand juries and noting that the investigatory grand jury "report[s] its findings to the court for possible prosecution").

In sum, because a prosecutor is entitled to absolute immunity for claims relating to his presentation of evidence to a grand jury, Bernard, 356 F.3d at 505, and more generally for conduct in preparation for "the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," Buckley, 509 U.S. at 273, Connelly is entitled to absolute immunity from Lawlor's claims based on his failure to disclose exculpatory evidence to the investigatory grand jury.

### C. Allegations of Misconduct After the Grand Jury Investigation

The Complaint alleges that, after the grand jury investigation, Connelly failed to disclose exculpatory information to the prosecutor assigned to litigate the state's case against Lawlor. Complaint ¶ 20. The Supreme Court's unanimous decision in Van de Kamp v. Goldstein, 129 S. Ct. 862 (2009), makes clear that Connelly is entitled to absolute immunity on any claim arising from this conduct.

In Van de Kamp, the Court held that absolute immunity applied to a claim that a prosecutor's office failed to adequately train and supervise deputy district attorneys and "failed to create any system for the Deputy District Attorneys handling criminal cases to access information" required to be disclosed as impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Van de Kamp, 129 S. Ct. at 861. To support its holding, the Court drew an analogy to a hypothetical case:

16

> Suppose that Goldstein had brought such a case, seeking
> damages not only from the trial prosecutor but also . . . from
> the trial prosecutor's colleagues--all on the ground that they
> should have found and turned over the impeachment
> material about Fink. Imbler makes clear that all these
> prosecutors would enjoy absolute immunity from such a suit.
> The prosecutors' behavior, taken individually or separately,
> would involve "[p]reparation . . . for . . . trial," 424 U.S., at
> 431, n. 33, . . . and would be "intimately associated with the
> judicial phase of the criminal process" because it concerned
> the evidence presented at trial. Id., at 430.

Van de Kamp, 129 S. Ct. at 862.

The hypothetical case considered in Van de Kamp is precisely the one before the court. Lawlor alleges that Connelly ought to have disclosed the exculpatory Brady material after the matter was transferred to a colleague for prosecution. Complaint ¶ 20. At that point, the prosecutors were clearly preparing for litigation of criminal charges, and their decisions about what information to disclose is clearly protected by absolute immunity. Van de Kamp, 129 S. Ct. at 862; Imbler, 424 U.S. at 430. Therefore, Connelly is entitled to absolute immunity for allegations that he failed to disclose exculpatory information to the attorney assigned to prosecute the case.

## V. CONCLUSION

For the foregoing reasons, Connelly's Motion to Dismiss (Doc. No. 9) is **GRANTED**. The Clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 5th day of May, 2011.

                                       /s/ Janet C. Hall
                                       Janet C. Hall
                                       United States District Judge